UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EURAYDICE SIMS,

        Plaintiff,

vs.                                                             Case No.  3:12-cv-1262-J-MCR

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

### MEMORANDUM OPINION AND ORDER[1]

      This cause is before the Court on Plaintiff's appeal of an administrative decision denying her applications for Disability Insurance Benefits and Supplemental Security Income.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is hereby **AFFIRMED**.

## I.   PROCEDURAL HISTORY

      Plaintiff filed applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income benefits on March 5, 2008, alleging disability beginning March 4, 2008.  (Tr. 33, 120-127).  The Social Security Administration denied Plaintiff's applications initially on July 17, 2008, and again upon reconsideration on November 20, 2008.  (Tr. 64-66, 68-70, 73-74, 76-77).  On January 12, 2009, Plaintiff requested a hearing before an administrative law judge (the "ALJ") and her case was heard June 3, 2010.  (Tr. 38-58, 89).  On March 14, 2011, the ALJ issued a decision finding Plaintiff not disabled.

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 8).

(Tr. 15-37).  Plaintiff requested review by the Appeals Council, which was denied on September 10, 2012.  (Tr. 12-14, 8-11).  Accordingly, the ALJ's March 14, 2011 decision is the final decision of the Commissioner.  Plaintiff filed her Complaint in the United States District Court on November 19, 2012.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    <u>Basis of Claimed Disability</u>

Plaintiff claims to have been disabled since March 4, 2008, due to diabetes, high blood pressure, emphysema, a thyroid problem, and high cholesterol.  (Tr. 159).

### B.    <u>Summary of Evidence Before the ALJ</u>

Plaintiff was born December 4, 1953, and was 56 years of age on the date of the hearing before the ALJ.  (Tr. 42).  Plaintiff attended school through high school and had past relevant work experience as an electronics inspector.  (Tr. 43, 32).  The following provides a brief summary of Plaintiff's medical history.

On January 14, 2002, Plaintiff was admitted to St. Vincent's Medical Center for pain in her lower leg joint.  (Tr. 433).  Plaintiff was diagnosed with severe pain in the right knee secondary to avascular necrosis and osteochondritis dissecans, non-insulin dependent diabetes mellitus, hypertension, gastroesophageal reflux, and hypercholesterolemia.  (Tr. 435).  On October 14, 2005, Plaintiff underwent an MRI of the lumbar spine, which revealed minimal/mild degenerative changes in the lower lumbar spine.  (Tr. 368).

The medical evidence also contains treatment notes from Dr. Rajesh M. Patel, M.D. from April 10, 2006.  (Tr. 238).  Dr. Patel noted Plaintiff had mild emphysema.  (Tr. 238). Dr. Patel referred Plaintiff to American Sleep Medicine where, on January 23, 2007, Dr.

2

Ricardo Izurieta performed an initial sleep disorder evaluation.  (Tr. 251-252).  Dr. Izurieta noted a possible upper airway resistance syndrome, however, he suggested further tests.  (Tr. 251-252).

On February 7, 2007, Dr. Patel ordered a CT of the head because Plaintiff was experiencing headaches.  (Tr. 253).  The CT scan came back negative.  (Tr. 253).  Plaintiff was sent for another CT of her abdomen and pelvis on August 9, 2007, which revealed a lower abdominal wall ventral hernia.  (Tr. 243-244).  Plaintiff underwent surgery to repair the hernia on September 6, 2007.  (Tr. 386).

On December 9, 2007, Plaintiff was seen at St. Vincent's Medical Center after a motor vehicle accident.  (Tr. 274).  An x-ray of Plaintiff's face revealed no facial fractures (274-275), while an x-ray of Plaintiff's left hand showed swelling, but no indication of fracture.  (Tr. 276).  Additionally, Plaintiff had an x-ray of her ribs, which showed no evidence of rib fracture and clear lungs.  (Tr. 278).

On February 25, 2008, Plaintiff underwent a series of x-rays for an "ulcer / emphysema" at the request of Dr. Patel.  (Tr. 240-242).  These x-rays yielded the following results: mildly prominent right infrahilar lymph node, clear lungs, mildly enlarged thyroid, chronic appearing lung changes, and an unremarkable esophagus.  (Tr. 240-242).

On June 6, 2008, Plaintiff underwent a clinical evaluation and mental status by Peter Knox, M.Ed., Psy.D.  (Tr. 284-289).  During this evaluation, Plaintiff identified the following medical conditions: diabetes, high blood pressure, high cholesterol, thyroid problems, emphysema, and some depression.  (Tr. 284).  Dr. Knox observed Plaintiff's mood to be slightly dysphoric with a tired, but appropriate affect.  (Tr. 286).  Plaintiff also reported that she had few limitations and that her main limitation was her constant coughing.  (Tr. 288).

3

She stated her coughing made her self-conscious.  (Tr. 288).  Dr. Knox found Plaintiff to have adjustment disorder with depressed mood and alcohol dependence.  (Tr. 288).  Dr. Lauriann Sandrik, Psy.D., performed a non-consultative review on June 12, 2008, where she also found Plaintiff to have adjustment disorder with depressed mood and alcohol dependence, but opined that her mental condition was not severe.  (Tr. 291-303).  Additionally, Dr. Gary Buffone, Ph.D. performed another non-consultative review and rendered the same opinions.  (Tr. 321-333).

On June 26, 2008, Plaintiff was seen by Dr. Hung Tran, M.D. for a consultative exam.  (Tr. 306-309).  Dr. Tran observed Plaintiff's chest to be normal with no shortness of breath and clear lungs.  (Tr. 308).  Dr. Tran's diagnoses list: diabetes, high blood pressure, depression, possible emphysema, and an old operation on abdomen.  (Tr. 309).  A Physical Residual Functional Capacity Assessment was also performed on July 17, 2008 by Abbey Falconer, who found diabetes and high blood pressure as the primary diagnoses. (Tr. 313).

Another Physical Functional Capacity Assessment was performed on November 17, 2008 by Dr. Edward DeMiranda, M.D.  (Tr. 335-342). Dr. DeMiranda opined Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.  (Tr. 339).  Dr. DeMiranda wrote that Plaintiff "apparently ha[d] COPD changes by x-rays and ha[d] some cough but continue[d] to smoke."  (Tr. 340).  He went on to write that "there was no evidence of S[hortness] O[f] B[reath] at CE on 6/26/08, lungs were clear."  (Tr. 340).

On November 4, 2008, Plaintiff received treatment from Dr. Luis Registre, M.D. and was observed to have no labored breathing, symmetric chest wall movement, and no wheezing.  (Tr. 345).  Dr. Registre instructed Plaintiff to quit smoking and advised her of the

4

health consequences of continued smoking.  (Tr. 346).  On June 1, 2009, Plaintiff had another chest x-ray, which showed her lungs to be clear and revealed no evidence of acute cardiopulmonary disease.  (Tr. 568).

Finally, Plaintiff underwent three other consultative examinations in November of 2010.  (577-606).  On November 22, 2010, Dr. Lynn Harper-Nimock, M.D. performed a neurological examination of Plaintiff and opined Plaintiff had marked limitations postoperatively for prolonged sitting, standing, walking, climbing, and heavy lifting.  (Tr. 580).  Dr. Harper-Nimock stated, however, that another evaluation was necessary because many activities could not be assessed secondary to the recent hernia surgery.[2]  (Tr. 580).  An Adult Personality Evaluation was also performed on November 22, 2010 by Dr. Allison Keiter, Pys.D., who diagnosed Plaintiff with alcohol dependence, high cholesterol, diabetes, high blood pressure, asthma, economical difficulties, and a GAF score of 75.  (Tr. 584-585).  Lastly, Dr. Robert Dehgan, M.D., performed an orthopedic consultative exam of Plaintiff on November 29, 2010.  (Tr. 590-606).  Dr. Dehgan found Plaintiff suffered from chronic low back pain, asthma, osteoarthritis, diabetes, and status post hernia repair.  (Tr. 592).

### C.   Summary of the ALJ's Decision

A claimant is entitled to disability benefits if she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last continuously for a period of at least twelve months.  42 U.S.C. §§ 416(i)(1); 423(d)(1)(A); 20 C.F.R. §416.905.  The ALJ must follow a five step sequential process in evaluating a claim of disability.  20 C.F.R. § 416.920(a)(4).

---

[2] There are references to a November 1, 2010 surgery to repair a hernia in Dr. Harper-Nimock's report, however, the transcript does not contain any records regarding this procedure.

First, if a claimant is performing substantial gainful activity, she is not disabled.  20 C.F.R. § 416.920(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments which significantly limits her ability to do basic work activities, she is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  Third, if the claimant's impairments meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart  P, Appendix 1, the claimant is considered disabled without regard to her age, education, or work experience.  20 C.F.R. § 416.920(a)(4)(iii).  Fourth, if the claimant's impairments do not meet or equal any of the listed impairments, they must prevent her from performing any past relevant work and if they do not, she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  Fifth, if the claimant's impairments (considering her age, education, work experience, and RFC) prevent her from doing other work that exists in the national economy, she is disabled.  20 C.F.R. § 416.920(a)(4)(v).  Claimants bear the burden of persuasion through the fourth step, but the burden shifts to the Commissioner at the fifth step.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287 n.5 (1987).

In the instant case, at the first step, the ALJ found Plaintiff's records indicated she had not engaged in substantial gainful activity since March 4, 2008, the alleged onset date. (Tr. 20).  At the second step, the ALJ found Plaintiff suffered from the following severe impairments: diabetes mellitus and obesity.  (Tr. 21).  The ALJ further found Plaintiff to have the following non-severe impairments: hypertension, hyperlipidemia, emphysema, asthma, allergies, back pain, neck pain, status post fractured right clavicle and ribs, hernias, thyroid disorder, neuropathy in feet, history of drug and alcohol abuse, and depression.  (Tr. 21).  At the third step, the ALJ found Plaintiff did not suffer from an impairment or combination of impairments which met or equaled any of those listed in 20

6

C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 27).  Consequently, the ALJ determined

Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can lift 20 pounds occasionally and 10 pounds frequently.  She can sit without interruption for 60 to 90 minutes, and for a total of eight hours out of an eight-hour workday.  She can stand without interruption for 30 minutes, and for a total of five hours out of an eight-hour workday.  She can walk without interruption for 10 minutes, and for a total of two hours out of an eight-hour workday.  She can occasionally balance, stoop, kneel, crouch, crawl, as well as climb stairs and ramps; however, she can never climb ladders or scaffolds.  She should avoid concentrated exposure to temperature extremes, humidity and wetness, as well as, fumes, odors, dusts, gases, poor ventilation and other pulmonary irritants.  She can tolerate occasional exposure to unprotected heights, vibrations and moving mechanical parts.

(Tr. 25).  At the fourth step, based on the Dictionary of Occupational Tittles (the "DOT"),

726.684-022, the ALJ found Plaintiff was able to perform her past relevant work as an

electronics inspector.  (Tr. 32).  Accordingly, the ALJ found Plaintiff was not disabled within

the meaning of the Social Security Act.  (Tr. 33).

## III.   ANALYSIS

### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied

the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and

whether the findings are supported by substantial evidence.  Richardson v. Perales, 402

U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971).  The Commissioner's findings of fact are

conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence

must do more than create a mere suspicion of the existence of a fact, and must include

relevant evidence which a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560.

**B.    Issues on Appeal**

Plaintiff raises three issues on appeal.  (Doc. 14, pp. 5-7).  First, Plaintiff argues the ALJ failed to properly consider whether she could return to her past relevant work.  Second, Plaintiff asserts the ALJ erred in failing to apply the Medical-Vocational Guidelines (the "Grids").  (Doc. 14, p.7).  Finally, Plaintiff contends the ALJ failed to properly consider impairments caused by the side effects of her prescribed medications.  (Doc. 14, p.7).  The Court will address each of these claims.

**1.    Whether the ALJ erred by failing to properly consider whether Plaintiff could return to her past relevant work**

Plaintiff makes several arguments that the ALJ improperly determined Plaintiff could return to her past relevant work as an electronics inspector.  (Doc. 14 at 5-6).  First, Plaintiff takes issue with the ALJ's finding that she should "avoid concentrated exposure to temperature extremes, humidity and wetness, as well as, fumes, odors, dusts, gasses, poor

8

ventilation, and other pulmonary irritants." (Doc. 14 at 5-6). Plaintiff believes the ALJ's use of the term "avoid concentrated exposure to," fails to specify the "extent (or concentration) to which the [P]laintiff might tolerate some exposure to the prohibited irritants." (Doc. 14 at 5-6).[3]

The Court does not agree. Plaintiff has cited to no authority for her proposition that the ALJ was required to provide more specificity with respect to the limitation of having to avoid concentrated exposure to environmental irritants. A cursory review of Form SSA-4734-BK, Physical Residual Functional Capacity Assessment, reveals that state agency physicians are given four choices to evaluate the severity of a claimant's environmental restriction: unlimited, avoid concentrated exposure, avoid even moderate exposure, and avoid all exposure. Accordingly, "avoid concentrated exposure" is the term utilized and approved by the SSA and the Court finds no error in the ALJ's use of said term.

Next, Plaintiff argues the ALJ should have used the opinion of a vocational expert ("VE") to determine if, given the environmental restrictions in the RFC, Plaintiff could perform her past relevant work as an electronics inspector. (Doc. 14, p. 6). Specifically, Plaintiff asserts that VE testimony was required to determine if, or to what extent, Plaintiff would be exposed to the identified irritants. (Doc. 14, p. 6).

When determining whether a claimant can perform her past relevant work, the

_____

[3] Plaintiff also makes an additional argument that the ALJ erred when he discussed Plaintiff's non-severe impairments of emphysema, asthma and allergies and found that said impairments would not prohibit performance of light work with the "usual environmental restrictions." (Doc. 14, p. 5, citing Tr. 21-22). Plaintiff believes it was error for the ALJ to simply state "usual environmental restrictions" without specifying the restrictions. While the undersigned agrees it would have been preferable for the ALJ to specify the restrictions, the Court finds no error as the ALJ later specified the restrictions to which he was referring in his RFC, which mirrored the environmental restrictions detailed in SSR 96-9P. The Court is confident these are the "usual environmental restrictions" to which the ALJ was referring.

regulations specify that an ALJ may use several different sources.  See 20 C.F.R.

§ 404.1560(b)(2).  For example, the ALJ may ask questions of the claimant, or others,

about the claimant's past work.  Id.  The ALJ may also use the Dictionary of Occupational

Titles (the "DOT") to obtain evidence regarding a claimant's ability to perform past relevant

work.  Id.; see also Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999) (holding that an

ALJ may take judicial notice of reliable job information from sources such as the DOT);

Waldrop v. Comm'r of Soc. Sec., 379 F.App'x. 948, 952 (11th Cir. 2010) (holding that an

ALJ may consult the DOT).  Finally, the ALJ may also consider the testimony of a VE as to

whether a claimant can perform her past relevant work. 20 C.F.R. § 404.1560(b)(2); see

also Waldrop, 379 F.App'x. at 952.  However, "while it is certainly permissible for an ALJ to

utilize a vocational expert's testimony at step four of the sequential evaluation process, it is

not required."  Jones v. Astrue, No. CA 09-0635-C, 2010 WL 1382339, at *6 (S.D. Ala. Mar.

31, 2010) (citing Hennes v. Comm'r of Soc. Sec., 130 F.App'x. 343, 345 (11th Cir. 2005)).

The Court finds no error in the ALJ's conclusion that Plaintiff could perform her past

relevant work as an electronics inspector without the aid of VE testimony.  At Finding No. 6,

the ALJ specifically referenced the DOT in determining Plaintiff was capable of performing

her past relevant work.  (Tr. 32).  As it relates to Plaintiff's pulmonary irritants, DOT

726.684-022, Electronics Inspector, states that the following environmental conditions are

not present in the job of an electronics inspector: exposure to weather, extreme cold,

extreme heat, wet and/or humid, vibration, atmospheric conditions, moving mechanical

parts, electric shock, high exposed places, radiation, explosives, toxic caustic chemicals,

and other environmental conditions.  1991 WL 679597.  In addition to the description from

the DOT, there was no testimony offered by Plaintiff as to the presence, or the extent

10

thereof, of any pulmonary irritants.  (Tr. 38-58).  Accordingly, the Court finds no error in the

ALJ's failure to utilize VE testimony with respect to whether Plaintiff could perform her past

relevant work.

Finally, Plaintiff claims to be unable to perform her past relevant work due to her

chronic coughing.  (Doc. 14 at 6).  Plaintiff, however, makes this argument in a mere

sentence, without citation to authority, and does not discuss the issue further.  This is not

sufficient and the Court will not engage in speculation as to Plaintiff's arguments regarding

this issue.  See Outlaw v. Barnhart, 197 F.App'x. 825, 828 n.3 (11th Cir. 2006) (plaintiff

waived issue regarding physical exertional impairments despite listing issue in brief where

plaintiff "did not elaborate on this claim or provide authority about this claim") (citing Cheffer

v. Reno, 55 F.3d 1517, 1519 n. 1 (11th Cir. 1995) (concluding that issue was waived, even

though party's brief listed the issue in the statement of issues, because party provided no

argument on the merits of the claim)); Rowe v. Schreiber, 139 F. 3d, 1381, 1382 n. 1 (11th

Cir. 1998) (noting in the absence of an argument, an issue is deemed abandoned);

Callahan v. Barnhart, 186 F.Supp.2d 1219, 1230 n. 5 (M.D. Fla. 2002) (noting that issue

raised only in heading of a brief without any further elaboration or factual support is

deemed waived).  Accordingly, the Court declines to consider this issue, which was not fully

briefed by Plaintiff's counsel.

## 2.    Whether the ALJ erred by failing to apply the Grids

Plaintiff's second argument alleges the ALJ erred by not using the Grids in his

evaluation of Plaintiff's claim.  (Doc. 14 at 7).  The Commissioner responds, arguing that

the Grids were not applicable to Plaintiff's claim because the ALJ found Plaintiff able to

perform her past relevant work, and thus not disabled, at step four of the sequential five-

step process.  (Doc. 15 at 10).

As noted above, the Regulations require a claim for benefits be evaluated under a five-step sequential process.  20 C.F.R. § 416.920(a)(4).  If the ALJ finds, at step four of the process, that a claimant is unable to perform her past relevant work, the process continues to step five, where the ALJ must determine if the claimant can perform other work given the claimant's RFC, age, education, and work experience.  <u>Waldrop</u>, 379 F.App'x at 952; <u>see also</u> <u>Crayton v. Callahan</u>, 120 F.3d 1217, 1219 (11th Cir. 1997) (explaining that if ALJ finds claimant unable to perform past relevant work, ALJ then proceeds to step five).  Once the ALJ proceeds to step five, the Grids become applicable.  <u>See</u> <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1242 (11th Cir 2004) (finding the "general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the [G]rids to determine if other jobs exist . . .").  However, where the ALJ has found the claimant capable of performing past relevant work, the Grids are inapplicable.  <u>Macia v. Bowen</u>, 829 F.2d 1009, 1012 (11th Cir. 1987) (holding plaintiff's argument that ALJ should have applied Grids failed because "Grid is applied only if claimant is unable to perform 'his or her vocationally relevant past work'") (quoting 20 C.F.R. 404, Subpart P, Appendix 2, § 200.00(a)).

In the present case, the ALJ found Plaintiff capable of performing her past relevant work as an electronics inspector.  (Tr. 32).  With this finding at step four of the process, the ALJ did not move on to step five to determine if Plaintiff could perform other work.  Since the ALJ's evaluation ended at step four, the Grids were not applicable and the Court finds no error in the ALJ's failure to consult the Grids.

### 3.   Whether the ALJ failed to properly consider the impact of the side effects of Plaintiff's prescribed medications on her ability to work

Finally, Plaintiff argues "the ALJ's rationale is also not supported by substantial evidence because it is not based upon a consideration which comprehensively described all of the plaintiff [sic] impairments."  (Doc. 14, p.7).  Then Plaintiff states that the record shows she was prescribed sixteen different medications.  Id.  The Court assumes Plaintiff is attempting to argue the ALJ erred in failing to properly consider the side effects of her prescribed medications.  However, like Plaintiff's argument regarding her chronic cough, Plaintiff has completely failed to support this claim of error.  Indeed, Plaintiff does not even point out the alleged side effects, much less show how such side effects affect her ability to work.  This is not sufficient.  See Outlaw, 197 F. App'x at 828 n. 3 (noting claimant waived issue because he did not elaborate on it or provide citation to authority); N.L.R.B. v. McClain of Georgia, Inc., 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").  Further, and more importantly, during the hearing at which Plaintiff was represented by counsel, the ALJ asked Plaintiff whether she had any side effects from her medication, to which Plaintiff responded "No, sir."  (Tr. 48).  Plaintiff bore the burden of providing evidence in support of a claim that her medications prevent her from working.  Walker, 404 F. App'x 362, 366 (11th Cir. 2010).  That burden has not been met.  Accordingly the Court finds that the ALJ's decision was based on substantial evidence and no error was committed.

## IV.     CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED**
pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter
judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this ___9th___ day of October, 2013.


_____
                    MONTE C. RICHARDSON
            UNITED STATES MAGISTRATE JUDGE


Copies to:

Counsel of Record